IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JULIA MCCREIGHT AND REBECCA WESTER, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CASE NO. 2:19-cv-865-ALB ) ) |
| AUBURNBANK; AUBURN NATIONAL BANCORPORATION, INC.; AND MICHAEL KING, | ) ) ) ) |
| Defendants. | ) ) |

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on motion by AuburnBank, Auburn National Bancorporation Inc., and Michael King ("Defendants") to dismiss the claims brought against them by Julia McCreight and Rebecca Wester ("Plaintiffs"). (Doc. 17 at 4-11). Although Plaintiffs allege seven total counts in their complaint, Defendants move to dismiss only Counts IV (intentional infliction of emotional distress), V (invasion of privacy), VI (tortious interference with contractual relations), and VII (negligent and wanton hiring). (Doc. 13 at 27-38). Upon consideration, Defendants' motion is due to be **GRANTED** in part and **DENIED** in part.

## **STANDARD**

When considering a motion to dismiss, the court accepts all facts alleged in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). There are two questions a court must answer before dismissing a complaint. First, the court must ask whether there are allegations that are no more than conclusions. If there are, they are discarded. Second, the court must ask whether there are any remaining factual allegations which, if true, could plausibly give rise to a claim for relief. If there are none, the complaint will be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## **BACKGROUND**

The following allegations are taken from the complaint and will be taken as true for the purposes of this order.

Julia McCreight and Rebecca Wester are women over the age of sixty who were each employed by AuburnBank in Auburn, Alabama as mortgage originators for over twenty years. Within the last two years, both women were terminated. Plaintiffs allege that their termination was due to the bigotry of Michael King, a Senior Vice President of Mortgage Lending, whom AuburnBank hired in late 2017. Plaintiffs allege that King subjected them to treatment that he did not subject younger employees to, including arbitrary threats to "fire them on the spot" and

openly spoke about his preference to hire young mortgage originators. In November of 2017, McCreight complained about this behavior to AuburnBank's human resources department and the bank's president, but no investigation took place.

Plaintiffs further allege that the bank hired Jamie McConnell, Barry Bryant and Blake Otwell as loan originators. At the time of hiring, Jamie McConnell was unqualified to work as a loan originator. Otwell and Bryant were subjected to no discipline despite disastrous loan errors and low origination numbers. McCreight was the most profitable originator working for the bank, with over $17 million in loans originated in 2017 alone. McCreight was fired in May of 2018 on the grounds that a customer was upset that his loan had been cancelled by the underwriters. McCreight avers that she was not responsible for this error and that it was a pretext for King to fire her for being old. McCreight was subsequently escorted from the building by Auburn police officers.

Wester alleges that the human resource department told her that she was too slow, was making too many typographical errors, and couldn't keep up with incoming documents despite receiving consistently excellent performance reviews for the preceding 20 years. Wester was placed on probation twice with no warning and repeatedly accused of working too slowly. Wester asked for a lateral transfer and was told that she would receive one, only to be fired later that week. The reason given for the firing was that she had failed to verify a customer's employment prior

to closing the loan. However, McCreight had taken two pre-approved and scheduled vacation days to have medical testing completed and had asked two other employees to complete this task. They failed to do so.

## **DISCUSSION**

Plaintiffs' allegations are insufficient to make out a claim on two of the four counts at issue. Plaintiffs do not allege behavior that was sufficiently outrageous and have failed to plead interference in a contractual relationship.

### I. **Defendants' conduct was insufficiently outrageous.**

Plaintiffs allege that they were subjected to conduct so outrageous that it qualifies as an intentional infliction of emotional distress. Defendants cite *Little v. Robinson*, 72 So. 3d 1168, 1171-72 (Ala. 2011) for the proposition that this tort has been tightly circumscribed by the Supreme Court of Alabama. Plaintiffs respond that the tort has been recognized in the employment context and cite *Lees v. Sea Breeze Health Center*, 391 F. Supp. 2d 1103, 1107 (S.D. Ala. 2005) for the proposition that the true test of whether something is outrageous is whether it was done in contravention of public policy.

In Alabama, the tort of intentional infliction of emotional distress is referred to as "outrage." There is a tripartite test to determine whether something outrageous has occurred. "The plaintiff must prove (1) that the defendant's conduct was intentional or reckless; (2) that it was extreme and outrageous; and (3) that it caused

emotional distress so severe that no reasonable person could be expected to endure it." *Ex parte Crawford & Co.*, 693 So. 2d 458, 460 (Ala. 1997).

The Supreme Court of Alabama has made it clear that "outrage" is a high bar, and the only consistently recognized categories of actionable conduct exist "in the family-burial context…[when] barbaric methods [are] employed to coerce an insurance settlement…and [in cases of] egregious sexual harassment." *Little* 72 So. 3d at 1172. In *Little* the court opined that, although the tort is not explicitly cabined to those three categories, the action in question needs to be at least as outrage-inducing as "a family physician who, when asked by a teenage boy's mother to counsel the boy concerning his stress over his parents' divorce, instead began exchanging addictive prescription drugs for homosexual sex for a number of years, resulting in the boy's drug addiction." *Id.* (quoting facts from *O'Rear v. B.H.,* 69 So.3d 106 (Ala. 2011)). The bottom line is that this tort is viable "only when the conduct is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.*

Attempts to further refine this test in the context of employee termination have resulted in a two-step process: the termination must be "for a reason which contravenes public policy…and…accompanied with the sound of fury." *Harrell v.*

*Reynolds Metals Co.*, 495 So. 2d 1381, 1387 (Ala. 1986); *see also Ritchey v. S. Nuclear Operating Co., Inc.*, 2008 WL 11342662, at *2 (N.D. Ala. Feb. 14, 2008) (acknowledging the test from *Harrell*). However, this test has occasionally enjoyed a somewhat flexible application. The Southern District of Alabama has held in two instances that any pattern of discriminatory conduct that violates public policy—and this Court is unable to think of any pattern that would not—is cognizable as an outrage claim if it culminates in termination. *See Hall v. Infirmary Health Sys.*, 2007 WL 772560, at *7 (S.D. Ala. Mar. 8, 2007) (outrage claim cognizable for a firing over taking medical leave to receive seven abdominal surgeries over an eight-month period); *see also Lees*, 391 F. Supp. 2d at 1108 (outrage claim cognizable where an employee was fired for her desire to join the military). In these cases, the court collapsed the two-step test into one, holding that "the violation of public policy furnishes the requisite 'sound of fury' to accompany the termination."[1] *Id.* In the

---

[1] The cases cited to substantiate this proposition are inapposite because they fall within one of the Supreme Court of Alabama's approved categories. In *Rice v. United Ins. Co. of America,* 465 So.2d 1100, 1102 (Ala.1984), a pattern of invidious sex-based discrimination culminated in a firing and caused a miscarriage. In *Cunningham v. Dabbs,* 703 So.2d 979, 983 (Ala.Civ.App.1997), a woman was sexually harassed in horrifying ways for a period of months before the harasser fired the woman on the day of her wedding as a punishment for getting married. These cases do not show a willingness on the part of the Supreme Court of Alabama to sanction a broad view of the tort of outrage.

Southern District's view, the pattern of misconduct need not even be discrimination based on an immutable characteristic, just a "violation of public policy."

This Court declines to follow the Southern District of Alabama in holding that any pattern of discrimination can support a claim of outrage. To do so would be to recognize a freestanding common-law anti-discrimination claim, which is inconsistent with how the Alabama state courts have treated the tort of outrage. Unlike the Southern District, the Supreme Court of Alabama has taken special care to accentuate the extreme nature of the tort of outrage. *See Gibbs v. Aetna Cas. & Sur. Co.*, 604 So. 2d 414, 415 (Ala. 1992) (holding that *Continental Casualty Insurance Co. v. McDonald,* 567 So.2d 1208, 1209 (Ala.1990), a case in which a company cruelly and intentionally withheld payment for pain treatment that they knew they owed in an attempt to press a nominal settlement, "has come to represent the minimum threshold that a defendant must cross in order to commit outrageous conduct"). The Southern District's approach, on the other hand, means there is no "garden variety" discrimination claim because every discrimination claim would come with an automatic outrage claim. *See Ritchey v. S. Nuclear Operating Co., Inc.*, 2008 WL 11342662, at *2 (N.D. Ala. Feb. 14, 2008) (holding that "[w]hether the discharge is actionable may tuenl (sic) on whether it was the culmination of a protracted pattern of discrimination in violation of public policy and accompanied by the 'sound of fury' (which may be actionable) or whether Plaintiff's claim is more

7

of a 'garden variety' discrimination claim (which is not actionable)"). And this result would directly contradict the requirement of the Supreme Court of Alabama that the tort be cognizable "only in the most egregious circumstances." *Thomas v. BSE Indus. Contractors, Inc.*, 624 So. 2d 1041, 1044 (Ala. 1993). *See also Thrasher v. Ivan Leonard Chevrolet, Inc.*, 195 F. Supp. 2d 1314, 1319 (N.D. Ala. 2002) (holding that a woman did not have a claim of outrage where she was harassed, scrutinized, and then fired on the basis of her pregnancy.); *see also Whaley v. Sony Magnetic Prod., Inc. of Am.*, 894 F. Supp. 1517, 1525 (M.D. Ala. 1995) (holding that failure to promote as a result of age discrimination does not support a claim of outrage).

In the instant case, Plaintiffs have failed to identify a superlative element that makes this case about more than garden variety workplace discrimination. Both Wester and McCreight allege patterns of discriminatory conduct in the work place; McCreight was repeatedly told that the bank was only interested in hiring young people because of their connections and Wester was repeatedly called "slow." However, the firings in this case, while they may have been dramatic, are not akin to the firing in *Cunningham*, nor do they rise to the level of the truly shocking and outrageous conduct in *O'Rear* and *McDonald*. The Court has little difficulty in concluding that the Supreme Court of Alabama would reverse a plaintiff's jury

verdict on an outrage claim based on the facts as alleged in this complaint. As a result, Plaintiffs' outrage claims are due to be dismissed.

## II. Plaintiffs have adequately plead a claim of false-light invasion of privacy.

Plaintiffs allege that Defendants invaded their privacy because Wester had her belongings rummaged through in front of her co-workers, McCreight was escorted out by police, and both were placed in an unfavorable light because of Defendants' false accusations. Defendants respond that to establish an invasion of privacy, Plaintiffs must allege intrusion and publication. However, Defendants incorrectly interpret Plaintiffs' false light invasion of privacy claim, *see Regions Bank v. Plott*, 897 So. 2d 239, 244 (Ala. 2004), as an intrusion upon seclusion invasion of privacy claim, *see Austin v. Mac-Lean Fogg Co.*, 999 F. Supp. 2d 1254, 1263 (N.D. Ala. 2014). In Alabama, these two torts are distinct.

In order to prove a false light invasion of privacy claim, Plaintiff must show that Defendants (1) publicized (2) false information about another that (3) would be highly offensive to the reasonable person and (4) either knew or acted in reckless disregard as to the falsity of the information. *See Regions Bank v. Plott*, 897 So. 2d 239, 244 (Ala. 2004). In our case, Wester and McCreight have certainly alleged the latter three elements; they say that even though they did nothing wrong and their employers knew that, they were fired in such a way as to create the impression that

they had been investigated and found to have committed misdeeds. The question is whether the Defendants effectively publicized the information. Plaintiff Wester asserts that her belongings were rummaged through by her supervisor before she was led out of the building and that lies about her misconduct were published to her business contacts. Plaintiff McCreight asserts that she was escorted out of the building by police and lies about her misconduct were published to her business contacts.

Although publicity is a close question, Plaintiffs allege that the information was disseminated widely enough to be considered publicized. For tortious invasion of privacy, the Alabama Supreme Court has adopted the language of the Second Restatement of Torts, which provides in relevant part that, "one who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy…" *Ex parte Birmingham News, Inc.*, 778 So. 2d 814, 818 (Ala. 2000). To achieve publicity, the statement must "reach the public." *Id.* It is not enough to expose information to a single person or a small group of persons. It must be "sufficient to give publicity within the meaning of the term." *Id.* (giving examples including publication in a newspaper, magazine, or handbill, or broadcast over a radio).

The communication at issue was primarily to Plaintiffs' coworkers. The Supreme Court of Alabama has held repeatedly that informing several coworkers is not sufficient. *See Rosen v. Montgomery Surgical Ctr.*, 825 So. 2d 735, 736 (Ala. 2001) (informing a coworker who then informed two others was insufficient for publication.); *Butler v. Town of Argo*, 871 So. 2d 1, 14 (Ala. 2003) (discussion of issue with five or six people in the office of the city clerk was insufficient to constitute publication.) Indeed, informing the entire office is insufficient for publication. *See Pouncy v. Vulcan Materials Co.*, 920 F. Supp. 1566, 1573 (N.D. Ala. 1996) (holding "there is no evidence that the comments allegedly made by Ms. Alford and Mr. Nelson were made outside the confines of Vulcan, therefore, Pouncy could not have been subjected to publicity…"). Alabama law even immunizes communications among employees from being considered publication when they occur "in the course of transacting the company's business and in the proper scope of the employee's duties." *Schrimsher v. Liberty Nat. Life Ins. Co.*, 655 So. 2d 986, 988 (Ala. 1995). However, here Defendants went further. Defendants misled each of Plaintiffs' "peers, employees and business contacts," that they had been discharged for misconduct. *See* Doc. 13 ¶173, 180.

At this early stage of the case, Plaintiffs have sufficiently alleged a false-light invasion of privacy claim. Although Defendants were allegedly aware that Plaintiffs committed no misconduct, they are alleged to have published statements about said

misconduct to the Auburn business community. Accordingly, the invasion of privacy claim will survive.

> **III. Defendants are not strangers to their contracts with Plaintiffs and have threatened no protectable relationships of Plaintiffs.**

Plaintiff McCreight has alleged that Defendants interfered in her contractual relations with AuburnBank, her colleagues, her business contacts, and AuburnBank management. *See* Doc. 20 at 12. They did this by having police escort McCreight from the building and by informing their business contacts of her firing and escort. Defendants respond that McCreight has not alleged any protectable business relationship in which they could have interfered. "The Eleventh Circuit has recognized that under Alabama law, the tort of interference with a business relationship includes the following elements: (1) the existence of a protected business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage." *Cochran v. Five Points Temporaries, LLC*, 907 F. Supp. 2d 1260, 1273 (N.D. Ala. 2012).

Defendants are correct; Plaintiff has failed to allege any specific contractual relationship that Defendants could have interfered with. Any Plaintiff alleging tortious interference must "identify the existence a (sic) business relationship worthy of the law's protection." *Glennon v. Rosenblum*, 325 F. Supp. 3d 1255, 1267 (N.D.

Ala. 2018). Nobody has a "legally protectable relationship with every potential participant in their local market." *Id*. To that end, it is necessary that Plaintiff allege a specific relationship that Defendants have interfered with. Plaintiff alleges that "Defendants informed Ms. McCreight's peers, employees and business contacts that she had been discharged for misconduct…to keep others from employing Ms. McCreight." *See* Doc. 13 at ¶186. Not only does she fail to allege any pre-existing contractual relationship but Plaintiff implicitly admits that any such business was yet to be consummated.

Of course, while there were no discernible business relationships between McCreight and her friends or business contacts, there were absolutely business relationships between her and AuburnBank. But her claim that AuburnBank, among other Defendants, interfered with her business relationship with AuburnBank fails for a different reason. "It is plaintiff's burden to plead 'that the defendant was a stranger to the protected business relationship with which the defendant interfered.'" *Cochran* 907 F. Supp. 2d 1273 (internal citation omitted). The Alabama Supreme Court has held that "a person with a direct economic interest in the contract is not a stranger to the contract. Parties to an interwoven contractual arrangement are not liable for tortious interference with any of the contracts or business relationships." *Id*. (internal citation omitted).

13

Plaintiff's claim that Defendants interfered in her contractual relationships with her friends and business contacts fails because she has not informed the Court of the specifics of those relationships. Her claim that Defendants interfered with her contractual relationships with Defendants fails because Auburn National Bancorporation and AuburnBank cannot be strangers to contracts with themselves. Mike King, an employee with control over the relationship, similarly cannot be such a stranger. *See Harris v. ACCC Ins. Co.*, 2016 WL 6986637, at *5 (M.D. Ala. Nov. 28, 2016).

## IV. Plaintiffs' invasion of privacy claim serves as the basis for negligent supervision and training.

Plaintiffs allege that Defendants are liable for negligent supervision and training. Plaintiffs base this liability on the assertion that Defendants had a duty to provide a safe work environment and, despite adequate notice of discriminatory actions, they failed to take action to train and discipline Michael King. Defendants respond that in Alabama there must be an underlying common-law tort for a party to adequately plead negligent supervision and training; a federal discrimination claim is not enough.

Defendants are correct. In Alabama, a plaintiff "cannot maintain an action for negligent supervision, training, and/or retention based upon conduct that is employment discrimination but does not support a common-law tort." *Thrasher v.*

*Ivan Leonard Chevrolet, Inc.*, 195 F. Supp. 2d 1314, 1320 (N.D. Ala. 2002). In *Thrasher* the discrimination alleged was gender-based and the court noted that Alabama recognizes no common-law gender discrimination tort. The instant case is different from *Thrasher* because Alabama has a law against age discrimination, the Alabama Age Discrimination in Employment Act, that has been found to support a claim of negligent training and supervision. *See Minard v. Sam's E., Inc.*, 2018 WL 6392200, at *4 (N.D. Ala. Dec. 6, 2018); *King v. CVS Caremark Corp.*, 2 F. Supp. 3d 1252, 1269, n.8 (N.D. Ala. 2014). This Alabama statute, as well as Plaintiffs' legitimate invasion of privacy claims, serve as a valid basis for a claim of negligent supervision and training.

### V. Justice does not require that Plaintiff be given leave to submit a second amended complaint.

Plaintiffs ask leave to amend their complaint a second time. They argue that this should be granted because (1) the case is in its initial stages, (2) Defendants have not yet answered the complaint, (3) the parties have not engaged in discovery, (4) and Plaintiffs' counsel has not yet received pertinent EEOC investigative files. *See* Doc. 20 at 14. Defendants argue that Plaintiffs should not be given another chance to amend. Defendants point out that, although Plaintiffs had an opportunity to amend their complaint in response to the motion to dismiss, and did in fact amend, they did not change anything that would be responsive to the motion to dismiss and

15

instead added another party whose claims are similarly deficient. The Court's decision to allow or deny a second chance to amend a complaint is equitable. *See Reeder v. Chitwood*, 595 F. App'x 890, 896 (11th Cir. 2014).

The Court is inclined to agree with Defendants. Federal Rule of Civil Procedure 15(a)(2) states that district courts "should freely give leave [to amend a complaint] when justice so requires." The Court is not convinced that notions of justice support Plaintiffs' thinking. Of the reasons that Plaintiffs have given to amend the complaint, none are even relevant to motions practice at the dismissal stage. In essence, Plaintiffs' four reasons are an argument that they will not be able to submit a satisfactory complaint until the Court has let them conduct discovery. That is not how pleading works. It is not the responsibility of the EEOC or Defendants to adequately plead Plaintiffs' case for them.

Accordingly, the Court will not give Plaintiffs a blank check to further amend their complaint in response to this order. However, if Plaintiffs file a motion to make a specific amendment, then the Court will evaluate that future hypothetical motion in due course.

## CONCLUSION

In light of the foregoing reasoning, Defendants motion to dismiss is due to be and is **GRANTED** as to counts IV and VI and **DENIED** as to counts V and VII.

**DONE** and **ORDERED** this 4th day of March 2020.

       /s/ Andrew L. Brasher
ANDREW L. BRASHER
UNITED STATES DISTRICT JUDGE